**FILED**

FEB 2 4 2011

DAVID CREWS, CLERK
BY _____
Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

**UNITED STATES OF AMERICA**

**v.**                                           CRIMINAL NO. 2:11CR 038

**RAYMOND LAMONT SHOEMAKER,**            18 U.S.C. § 371
**a.k.a. "RAY SHOEMAKER,"**              18 U.S.C. § 666
**and EARNEST LEVI GARNER, JR**          18 U.S.C. § 1001
**a.k.a. "LEE GARNER"**                  18 U.S.C. § 1014
                                         42 U.S.C. § 1320

## INDICTMENT

The Grand Jury Charges that:

## COUNT ONE
### (Nursing Services Kickback/Bribery Conspiracy)
### 18 USC 371

1.      From on or about May 2005, to on or about June 2007, in the Northern District of

Mississippi, RAYMOND LAMONT SHOEMAKER, aka "RAY SHOEMAKER," defendant herein,

being an agent of an organization, that is being the Chief Operating Officer and/or Chief Executive

Officer of Tri-Lakes Medical Center (hereinafter "TLMC"), did knowingly and willfully conspire

with defendant EARNEST LEVI GARNER, aka "LEE GARNER," David Chandler, who is not

charged in this indictment, and other persons known and unknown to the grand jury, to commit an

offense against the United States, i.e., to solicit, accept, offer and give anything of value for the

purpose of influencing or being influenced in regard to any business, transaction or series of

transactions of TLMC, which was a hospital located in Batesville, Mississippi, and which received

during this time period benefits in excess of $10,000 per year under federal programs including

Medicare and Medicaid, which business, transaction or series of transactions involved anything of

value of $5,000 or more, in violation of Section 666 of Title 18 of the United States Code.

## Introduction

2.    TLMC was a hospital located in Batesville, Mississippi, which received in excess of $10,000 per year under federal programs including Medicare and Medicaid and as such, was an organization as set forth in 18 U.S.C. § 666. In May 2005, when this conspiracy began, TLMC was owned by Panola County and the City of Batesville. TLMC was subsequently sold to a private entity on or about November 15, 2005.

3.    At all relevant times, David Chandler (hereinafter "Chandler") was the Panola County Administrator and as such was an agent of a state or local government for purposes of 18 U.S.C. 666. During the relevant time period in which TLMC was owned by Panola County and the City of Batesville, Chandler was likewise the President of the Board of TLMC and as such, was an agent of the organization for purposes of 18 U.S.C. § 666. As President of the Board, Chandler had influence over the business transactions and contracts of TLMC.

4.    At all relevant times, defendant SHOEMAKER was the Chief Operating Officer and/or Chief Executive Officer of TLMC and therefore, like Chandler, was an agent of the organization for purposes of 18 U.S.C. § 666.

5.    At all relevant times, defendant Lee GARNER (hereinafter "GARNER") operated and controlled one or more nursing staffing companies, including Guardian Angel Nursing and On-Call Staffing, which were in the name of a family member.

6.    In or about February 2005, Guardian Angel Nursing entered into a contract with TLMC to provide nursing services for TLMC, for which Guardian Angel Nursing would be paid by TLMC an hourly rate for the nursing services provided. The value of this contract exceeded $5,000.

7.    TLMC was sold to a private entity on or about November 15, 2005, and shortly

2

after that defendant SHOEMAKER's title changed from Chief Operating Officer (COO) to Chief Executive Officer (CEO) of TLMC. With the sale of TLMC, the board was replaced and Chandler lost his position as a member of the board, but continued as the County Administrator for Panola County.

## Manner and Means

8. It was part of the conspiracy that Defendant GARNER agreed to pay and would pay Chandler a kickback and bribe of $5 per hour for every hour of nursing services billed to TLMC by GARNER'S nursing services. In return for the bribes and kickbacks, Chandler, the President of the TLMC Board of Directors and the County Administrator, would use his influence to increase TLMC's use of GARNER'S nursing services, and would ensure that the bills submitted by defendant GARNER's nursing service would be paid in a timely manner by TLMC. In this manner, Chandler was rewarded for his influence in increasing billable hours and in securing payments of the bills as well as the timeliness of the payments. From on or about March 2005 to on or about July 2007, through Guardian Angel Nursing and On-Call Staffing, GARNER paid Chandler approximately $268,000 in kickbacks and bribes pursuant to the scheme.

9. In furtherance of the conspiracy, Chandler acted as liaison between GARNER and SHOEMAKER and personally obtained and delivered TLMC checks to one of GARNER's employees. Chandler maintained a relationship with SHOEMAKER in order to influence SHOEMAKER with regard to GARNER'S nursing services, and as president of the TLMC board of directors, Chandler approved an increase of $50,000 in SHOEMAKER'S annual salary. Chandler arranged meetings between GARNER and SHOEMAKER in which the ongoing relationship between Guardian Angel Nursing and TLMC was discussed.

3

10.     Around November 2005, GARNER, SHOEMAKER and Chandler met at a restaurant in Como, Mississippi. GARNER wanted to talk with SHOEMAKER about getting a greater share of TLMC nursing hours for GARNER's nursing service, and GARNER talked with SHOEMAKER alone during part of the meeting.

11.     Shortly after the Como meeting, SHOEMAKER demanded payment of a promised bribe and kickback of $25,000 for increasing TLMC's use of GARNER'S nursing service. SHOEMAKER had upheld his part of the agreement with GARNER to increase TLMC's use of GARNER'S nursing service and he wanted GARNER to uphold his agreement to pay SHOEMAKER $25,000. Chandler informed GARNER of SHOEMAKER'S demand, and GARNER and Chandler agreed that Chandler would pay the bribe and kickback to SHOEMAKER out of the bribe money that GARNER was paying directly to Chandler. In accord with this agreement, from on or about January 27, 2006, to on or about July 27, 2006, Chandler paid defendant SHOEMAKER a total of $12,000, all of which was paid toward SHOEMAKER'S bribe and kickback demand for $25,000. Chandler also made the payments to SHOEMAKER to ensure that SHOEMAKER would maintain TLMC's use of GARNER'S nursing services.

12.     As part of the coverup of the conspiracy, when SHOEMAKER was later confronted about the $12,000 he had received from Chandler, SHOEMAKER falsely claimed that the money was a loan, claiming that he had borrowed the money from Chandler.

### Overt Acts

13.     During and in furtherance of the conspiracy and to effect the objects of the conspiracy, at least one of the co-conspirators committed at least one of the following overt acts on or about the dates listed:

4

(a)    On May 25, 2005, Guardian Angel Nursing, under the supervision and direction
of LEE GARNER, issued a check made payable to David Chandler in the amount
of $3,000.

(b)    On July 11, 2005, Guardian Angel Nursing, under the supervision and direction
of LEE GARNER, issued a check made payable to David Chandler in the amount
of $15,000.

(c)    On September 2, 2005, Guardian Angel Nursing, under the supervision and
direction of LEE GARNER, issued a check made payable to David Chandler in
the amount of $26,000.

(d)    On October 4, 2005, Guardian Angel Nursing, under the supervision and direction
of LEE GARNER, issued a check made payable to David Chandler in the amount
of $12,000.

(e)    On December 23, 2005, Guardian Angel Nursing, under the supervision and
direction of LEE GARNER, issued a check made payable to David Chandler in
the amount of $18,000.

(f)    On December 30, 2005, Guardian Angel Nursing, under the supervision and
direction of LEE GARNER, issued a check made payable to David Chandler in
the amount of $28,000.

(g)    On January 27, 2006, defendant RAY SHOEMAKER received a check in the
amount of $2,000 from David Chandler.

(h)    On February 22, 2006, Guardian Angel Nursing, under the supervision and
direction of LEE GARNER, issued a check made payable to David Chandler in
the amount of $25,000.

5

(i)     On March 1, 2006, defendant RAY SHOEMAKER received a check in the amount of $2,000 from David Chandler.

(j)     On April 17, 2006, Guardian Angel Nursing, under the supervision and direction of LEE GARNER, issued a check made payable to David Chandler in the amount of $20,000.

(k)     On April 17, 2006, defendant RAY SHOEMAKER received a check in the amount of $2,000 from David Chandler.

(l)     On May 23, 2006, defendant RAY SHOEMAKER received a check in the amount of $2,000 from David Chandler.

(m)     On June 2, 2006, Guardian Angel Nursing, under the supervision and direction of LEE GARNER, issued a check made payable to David Chandler in the amount of $20,000.

(n)     On July 21, 2006, On-Call Staffing, under the supervision and direction of LEE GARNER, issued a check made payable to David Chandler in the amount of $20,000.

(o)     On July 27, 2006, defendant RAY SHOEMAKER received a check in the amount of $4,000 from David Chandler.

(p)     On September 1, 2006, On-Call Staffing, under the supervision and direction of LEE GARNER, issued a check made payable to David Chandler in the amount of $14,000.

(q)     On October 27, 2006, On-Call Staffing, under the supervision and direction of LEE GARNER, issued a check made payable to David Chandler in the amount of $20,000.

(r)    On January 5, 2007, On-Call Staffing, under the supervision and direction of LEE

GARNER, issued a check made payable to David Chandler in the amount of

$15,000.

(s)    On March 15, 2007, On-Call Staffing, under the supervision and direction of LEE

GARNER, issued a check made payable to David Chandler in the amount of

$17,000.

(t)    On June 15, 2007, On-Call Staffing, under the supervision and direction of LEE

GARNER, issued a check made payable to David Chandler in the amount of

$15,000.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Nursing Services Kickbacks and Bribes)
18 USC 666

1.    The allegations contained in paragraphs 1 through 13 of Count One of this

Indictment are re-alleged and incorporated herein.

2.    From on or about May 2005, to on or about June 2007, in the Northern District of

Mississippi, EARNEST LEVI GARNER, JR, aka "LEE GARNER," defendant herein, did

knowingly, intentionally, and corruptly give, offer, and agree to give a thing of value, that is,

money, with intent to influence or reward an agent of TLMC, an organization as set forth in 18

U.S.C. § 666, which received during this time period in excess of $10,000 per year in federal

program benefits, including Medicare and Medicaid, and an agent of Panola County Mississippi,

a State or local government, which received during this time period benefits in excess of $10,000

per year in federal program benefits, in connection with certain business, transaction or series of

transactions of TLMC involving a thing of value of $5,000 or more, that is, the maintenance of a

7

nursing contract between Guardian Angel Nursing and TLMC, the use of GARNER'S nursing

services, Guardian Angel Nursing and On Call Staffing, and the timely payment of bills

submitted by defendant GARNER's nursing service to TLMC, all in violation of Title 18, United

States Code, Section 666.

### COUNT THREE
(Nursing Services Kickbacks and Bribes)
18 USC 666

1.     The allegations contained in paragraphs 1 through 13 of Count One of this

Indictment are re-alleged and incorporated herein.

2.     From on or about November 2005, to on or about June 2007, in the Northern

District of Mississippi, RAYMOND LAMONT SHOEMAKER, aka "RAY SHOEMAKER,"

defendant herein, being an agent of an organization, that is being the Chief Operating Officer

and/or Chief Executive Officer of TLMC, an organization which received during this time period

in excess of $10,000 per year in federal program benefits, including Medicare and Medicaid, did

knowingly, intentionally, and corruptly solicit, demand, accept, and agree to accept a thing of

value, that is, money, intending to be influenced and rewarded in connection with certain

business, transaction or series of transactions of TLMC involving a thing of value of $5,000 or

more, that is, the use of nursing services provided by Guardian Angel Nursing and On Call

Staffing, and the timely payment of bills submitted by defendant GARNER's nursing service to

TLMC, all in violation of Title 18, United States Code, Section 666.

8

## COUNT FOUR
(Healthcare Fraud Conspiracy)
18 USC 371

1.      The allegations contained in paragraphs 1 through 13 of Count One of this Indictment are re-alleged and incorporated herein.

2.      From on or about November 2005, to on or about June 2007, in the Northern District of Mississippi, defendants RAYMOND LAMONT SHOEMAKER, aka "RAY SHOEMAKER," and EARNEST LEVI GARNER, aka "LEE GARNER," did knowingly and willfully conspire with each other, and David Chandler, who is not charged in this indictment, and other persons known and unknown to the grand jury, to commit an offense against the United States, i.e., to solicit, receive, offer and pay remuneration, that is, a kickback, bribe, or rebate, in return for, or for the purpose of, arranging for or recommending purchasing or ordering any service for which payment may be made in whole or in part under a Federal health care program, as described in Title 42, United States Code, Section 1320a-7b.

## Manner and Means

3.      The payments solicited, received, offered and paid by defendants SHOEMAKER and GARNER, and by Chandler, as described in paragraphs 8 through 14 of Count One and incorporated herein by reference, were for the purpose of influencing defendant SHOEMAKER to arrange for and recommend that TLMC purchase or order nursing services from GARNER's nursing service, including Guardian Angel Nursing and On-Call Staffing. The nursing services provided by GARNER's nursing service were paid for in whole or in part under Medicaid and Medicare, each of which is a Federal health care program as defined in 42 U.S.C. § 1320a-7b.

9

## Overt Acts

4.       During and in furtherance of the conspiracy and to effect the objects of the

conspiracy, at least one of the co-conspirators committed at least one of the following overt acts

on or about the dates listed below:

(a)       Between May 2005 and June 2007, defendant LEE GARNER paid David

Chandler approximately $268,000 to influence TLMC, and SHOEMAKER in

particular, to increase and maintain the use of GARNER'S nursing service, and

from January 2006 through July 2006, Chandler used the some of the proceeds to

generate payments directly to SHOEMAKER.

(b)       On January 27, 2006, defendant RAY SHOEMAKER received a check in the

amount of $2,000 from David Chandler.

(c)       On March 1, 2006, defendant RAY SHOEMAKER received a check in the

amount of $2,000 from David Chandler.

(d)       On April 17, 2006, defendant RAY SHOEMAKER received a check in the

amount of $2,000 from David Chandler.

(e)       On May 23, 2006, defendant RAY SHOEMAKER received a check in the

amount of $2,000 from David Chandler.

(f)       On July 27, 2006, defendant RAY SHOEMAKER, received a check in the

amount of $4,000 from David Chandler.

All in violation of Title 18, United States Code, Section 371 and Title 42, United States

Code, Section 1320a-7b.

## COUNT FIVE
(Healthcare Fraud)
42 USC 1320a-7b)

1.      The allegations contained in paragraphs 1 through 13 of Count One of this

Indictment and paragraphs 1 through 4 of Count Four of this Indictment are re-alleged and

incorporated herein.

2.      From on or about November 2005 to on or about June 2007, in the Northern

District of Mississippi, EARNEST LEVI GARNER, aka "LEE GARNER," defendant herein, did

knowingly and willfully offer and pay remuneration, that is, a kickback, bribe, or rebate, to a

person for the purpose of inducing that person to arrange for or recommend purchasing or

ordering a service for which payment may be made in whole or in part under a Federal health

care program, in violation of Title 42, United States Code, Section 1320a-7b.

## COUNT SIX
(Healthcare Fraud)
42 USC 1320a-7b)

1.      The allegations contained in paragraphs 1 through 13 of Count One of this

Indictment and paragraphs 1 through 4 of Count Four of this Indictment are re-alleged and

incorporated herein.

2.      From on or about November 2005 to on or about June 2007, in the Northern

District of Mississippi, RAYMOND LAMONT SHOEMAKER, aka "RAY SHOEMAKER,"

defendant herein, did knowingly and willfully solicit and receive remuneration, that is, a

kickback, bribe, or rebate, in return for arranging for or recommending purchasing or ordering a

service for which payment may be made in whole or in part under a Federal health care program,

in violation of Title 42, United States Code, Section 1320a-7b.

11

## COUNT SEVEN
(False Statements)
18 USC 1001

1. The allegations contained in paragraphs 1 through 13 of Count One of this Indictment and paragraphs 1 through 4 of Count Four of this Indictment are re-alleged and incorporated herein.

2. On or about October 22, 2009, and on or about March 4, 2010, in the Northern District of Mississippi, RAYMOND LAMONT SHOEMAKER, aka "RAY SHOEMAKER," defendant herein, in a matter within the executive branch of the Government of the United States, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations to Federal Bureau of Investigation (FBI) and other federal government agents in violation of Title 18, United States Code, Section 1001.

3. Specifically, when questioned by federal agents on or about October 22, 2009, about the payments from David Chandler to defendant SHOEMAKER referenced in paragraphs 13 of Count One, defendant SHOEMAKER falsely stated that he had never received any money from Chandler. When federal agents subsequently interviewed SHOEMAKER on or about March 4, 2010, and confronted him with copies of the checks given to him by Chandler, defendant SHOEMAKER falsely stated that he had borrowed the money from Chandler, when in truth and fact the checks SHOEMAKER received from Chandler were kickbacks for TLMC's use of Earnest Levi Garner's nursing service. These statements constitute materially false, fictitious and fraudulent statements to federal law enforcement agents, made for the purpose of misleading the agents, in violation of Title 18, United States Code, Section 1001.

.

## COUNT EIGHT
(False Statements to the USDA/RDA in connection with a loan)
18 USC 1014

1.     The defendant, RAYMOND LAMONT SHOEMAKER, aka "RAY

SHOEMAKER," as Chief Operating Officer of Physicians and Surgeon's Hospital d.b.a. Tri-

Lakes Medical Center, did knowingly and intentionally make and cause to be made a material,

false statement to the Rural Development Association of the United States Department of

Agriculture.

### Introduction and Background of the Scheme

2.     On or about March 4, 2003, RAY SHOEMAKER, the defendant, created a

Mississippi non-profit corporation named Kaizen Consulting Managing and Researching

(CMR) (hereinafter "Kaizen").

3.     In June 2005, a private party entered into an agreement to purchase Tri-Lakes

Medical Center (hereinafter "TLMC"), which was located in Batesville, Panola County,

Mississippi, from Panola County and the City of Batesville, and operate it as a for-profit

hospital. Shortly thereafter, the private party became aware that the United States Department of

Agriculture (USDA) Rural Development Administration (RDA) might be able to guarantee 90%

of a loan used to finance the purchase of the hospital, but only if the hospital was purchased by a

non-profit organization. On or about July 28, 2005, SHOEMAKER changed the name of his

non-profit from Kaizen CMR to Physician and Surgeons Hospital Group (hereinafter "PSHG"),

thereby giving PSHG non-profit status, and shortly afterwards, PSHG was substituted as the

purchaser of TLMC and applied for a USDA-guaranteed loan to purchase TLMC. Concurrently

with changing non-profit Kaizen into non-profit PSHG, Shoemaker converted Kaizen into a for-

profit entity using the name Kaizen.

13

4.  On or about November 15, 2005, PSHG purchased TLMC from the City of Batesville and Panola County, Mississippi for approximately $27,325,000.

5.  In connection with the purchase of TLMC, PSHG borrowed $27,325,000 from UPS Capital Business Credit (hereinafter "UPS Capital") and Stillwater National Bank and Trust Company (hereinafter "Stillwater").

6.  The Rural Development Administration of the United States Department of Agriculture (hereinafter "USDA"), provided a guarantee for 90% of the $27,325,000 loan.

7.  In addition to the $27,325,000 loan, PSHG also secured a $2,100,000 line of credit from Stillwater for general working capital purposes.

8.  As early as December 2005, PSHG contacted the Healthcare Financial Services division of the General Electric Capital Corporation (hereinafter "GE Capital") and began seeking a larger, $4,000,000 line of credit to replace the $2,100,000 line of credit with Stillwater.

9.  On or about January 30, 2006, GE Capital provided a commitment letter, addressed to RAY SHOEMAKER as Chief Executive Officer of PSHG, agreeing to provide PSHG with a $4,000,000 line of credit "for working capital purposes, refinancing existing working capital indebtedness, and other corporate purposes to be determined."

10. UPS Capital had no objection to the new line of credit with GE Capital and approved same on or about January 26, 2006.

11. The new, larger $4,000,000 line of credit would take a priority position ahead of the $27,325,000 loan backed by the USDA's 90% guarantee. Thus, in the event of default on the loans, if any funds or assets were available to pay creditors, they would be applied to pay the GE loan before the USDA-guaranteed loan from UPS Capital. As a result, the $4,000,000 line of credit would weaken the USDA's position as 90% guarantor and would require the USDA's

14

approval before coming into effect.

12.     On or about March 2, 2006, the USDA denied PSHG's request for the $4,000,000 line of credit from GE Capital.

## The Scheme

13.     RAY SHOEMAKER, the defendant, in an effort to convince the USDA to reverse its decision and approve the new larger, $4,000,000 line of credit did knowingly make and cause to made a material misstatement to the USDA in that he failed to disclose his intention to use the proceeds of the $4,000,000 line of credit to generate a $250,000 payment from PSHG to Kaizen CMR for his own personal benefit and use; that is:

14.     On or about March 7, 2006, RAY SHOEMAKER, the Chief Executive Officer of PSHG, submitted a letter to the USDA in response to the USDA's refusal to allow PSHG to obtain the larger, $4,000,000 line of credit from GE Capital.  SHOEMAKER'S letter stated that without the $4,000,000 line of credit, "the future of the hospital is in jeopardy"and SHOEMAKER closed the letter by stating "Every day this decision is post-phoned puts the hospital in jeopardy"(spelling error in original).  SHOEMAKER failed to disclose to the USDA his intention to use the proceeds of the $4,000,000 line of credit to generate a $250,000 payment for his own personal benefit and use.

15.     On or about March 28, 2006, the USDA reversed its original decision and allowed PSHG to obtain the $4,000,000 line of credit from GE Capital.

16.     On or about April 7, 2006, RAY SHOEMAKER, as Chief Executive Officer of PSHG, signed an Acknowledgement attached to the Intercreditor Agreement between UPS Capital and GE Capital which made the $4,000,000 line of credit available to PSHG.

17.     On or about April 7, 2006, RAY SHOEMAKER, as CEO of PSHG, signed a

15

Payment of Proceeds Letter requesting the first disbursement from the new $4,000,000 line of credit.

18.     On or about April 7, 2006, RAY SHOEMAKER used his authority as Chief Executive Officer of PSHG to cause PSHG to issue a check in the amount of $250,000 payable to RAY SHOEMAKER'S company, Kaizen CMR. RAY SHOEMAKER deposited the $250,000 into a bank account with First Delta Credit Union in Marks, Mississippi for his own personal benefit and use.

## 18 U.S.C. § 1014

19.     On or about March 7, 2006, in the Northern District of Mississippi, the defendant, RAY SHOEMAKER, aided and abetted by other persons known and unknown to the grand jury, did knowingly make and cause to be made material, false statements and reports for the purpose of influencing the action of the Rural Development Administration of the United States Department of Agriculture, upon and in connection with the Rural Development Administration's decision to allow Physicians and Surgeons Hospital Group to obtain a $4,000,000 line of credit from the General Electric Capital Corporation; that is, RAY SHOEMAKER withheld and failed to disclose the fact that he intended to use the proceeds of the $4,000,000 line of credit to generate a $250,000 payment from PSHG to Kaizen CMR for his own personal benefit and use,

all in violation of Title 18, United States Code, Sections 2 and 1014.

### COUNT NINE
(Embezzlement of $250,000 from TLMC)

18 USC 666

1.     The allegations contained in paragraphs 1 through 19 of Count Eight of this

16

Indictment are re-alleged and incorporated herein.

2.      On or about April 7, 2006, in the Northern District of Mississippi, RAYMOND
LAMONT SHOEMAKER, aka "RAY SHOEMAKER," defendant herein, being an agent of an
organization, that is, the Chief Executive Officer of PSHG, which received in excess of $10,000
in the 2006 calendar year under a federal program of federal financial assistance, namely
Medicare and Medicaid, did knowingly and intentionally embezzle, steal, obtain by fraud and
otherwise without authority knowingly convert to his own use property of PSHG valued at
$5,000 or more, to wit: RAY SHOEMAKER used his position and authority as Chief Executive
Officer of PSHG to cause PSHG to issue a check in the amount of $250,000 payable to his
company, Kaizen CMR, for his own personal benefit and use, all in violation of Title 18, United
States Code, Section 666.

### COUNT TEN
(Embezzlement from Humphreys County Memorial Hospital)
18 USC 666

1.      Using his position as the manager and administrator of Humphreys County
Memorial Hospital, defendant RAYMOND LAMONT SHOEMAKER, aka "RAY
SHOEMAKER," misapplied, embezzled, stole, converted and obtained by fraud hospital funds
to benefit himself and his private company.

### Introduction and Background of the Scheme

Humphreys County Memorial Hospital

2.      At all times relevant to this indictment, Humphreys County, Mississippi was a
local government, political subdivision of the State of Mississippi which received in excess of
$10,000 in federal program benefits each year for the calendar years 2007 and 2008 as set forth

17

in Title 18, United States Code, Section 666.

3.     Prior to April 30, 2008, Humphreys County Memorial Hospital (hereinafter "Humphreys County Hospital") was a county-owned, 34-bed, critical access hospital located in Belzoni, Mississippi, a small, rural community with a population of approximately 3,000 people. Humphreys County Hospital received in excess of $10,000 in federal program benefits each year in calendar years 2007 and 2008 and as such was an organization as set forth in Title 18, United States Code, Section 666.

4.     In January 2007, the defendant, RAY SHOEMAKER, through his company, Rural Healthcare Developers, entered into a management agreement with Humphreys County Hospital, a county-owned, critical access hospital located in Belzoni, MS.  The management agreement gave RAY SHOEMAKER full control of all hospital operations, subject to the authority of the hospital's board of trustees.

5.     SHOEMAKER continued as the sole manager of Humphreys County Hospital until April 30, 2008, when SHOEMAKER, through Rural Healthcare Developers, purchased the hospital from Humphreys County.

6.     From on or about January 2007 to on or about April 30, 2008, Humphreys County Hospital paid RAY SHOEMAKER, through Rural Healthcare Developers, approximately $1.7 million in management fees.

Riverbirch Assisted Living / Sara Lou Properties

7.     At all times relevant to this indictment, an assisted living facility known as Riverbirch Assisted Living (hereinafter "Riverbirch") was located in Plantersville, Mississippi, approximately 160 miles away from Humphreys County Hospital in Belzoni, Mississippi, and the owners also operated a company under the name Sara Lou Properties, also located in

18

Plantersville, Mississippi.

8.      From on or about March 2007 to on or about April 2008, Humphreys County Hospital, under the direction of RAY SHOEMAKER, paid Riverbirch and/or Sara Lou Properties approximately $457,000.

**The Scheme**

9.      From on or about January 2008 to on or about April 30, 2008, in the Northern District of Mississippi, defendant RAY SHOEMAKER used his position and influence as the manager and administrator of Humphreys County Hospital to intentionally misapply and knowingly embezzle, steal, obtain by fraud and otherwise without authority convert to his own use, property valued at $5,000 or more owned by or under the care, custody, and control of Humphreys County Hospital, that is:

10.      From on or about January 2008 to on or about April 2008, RAY SHOEMAKER misappropriated and embezzled Humphreys County Hospital funds in order to pay approximately $39,922 to Riverbirch/Sara Lou Properties for construction work performed on a mobile home trailer SHOEMAKER owned in Ackerman, Choctaw County, Mississippi, approximately 100 miles away from Humphreys County Hospital.  At SHOEMAKER'S direction, Riverbirch/Sara Lou Properties remodeled the mobile home and submitted the bills to Humphreys County Hospital for reimbursement. Shortly after RAY SHOEMAKER remodeled the mobile home in Ackerman, Mississippi with Humphreys County funds, he used it for his profit-making business with Choctaw County Medical Center, using the mobile home for the outpatient psychiatric services program for Choctaw County Medical Center, a separate and distinct hospital in Ackerman, Mississippi that did not have a relationship with Humphreys County Hospital.  The construction work performed on the mobile home in Ackerman,

19

Mississippi was for the personal benefit of RAY SHOEMAKER in his profit-making business
with Choctaw County Medical Center, as further detailed below

        a.      On or about January 18, 2008, RAY SHOEMAKER, through Rural
Healthcare Developers, entered into an agreement with Choctaw County
Medical Center entitled "Partial/Intensive Outpatient Psychiatric Therapy
Services Agreement" to establish and operate an outpatient psychiatric
services program for Choctaw County Medical Center.

        b.      On or about January 21, 2008, RAY SHOEMAKER, through Rural
Healthcare Developers, entered into another agreement with Choctaw
County Medical Center entitled "Inpatient Psychiatric Therapy Services
Agreement" to establish and operate an inpatient psychiatric services
program for Choctaw County Medical Center.

        c.      On or about January 25, 2008, RAY SHOEMAKER, through Rural
Healthcare Developers, purchased a mobile home trailer located near the
Choctaw County Medical Center for approximately $32,650. RAY
SHOEMAKER purchased the mobile home trailer for use as a clinical
location for outpatient psychiatric services to be performed in connection
with his "Partial/Intensive Outpatient Psychiatric Therapy Services
Agreement" with Choctaw County Medical Center.

        d.      From on or about January 25, 2008 to on or about March 24, 2008, RAY
SHOEMAKER misappropriated and embezzled approximately $39,922.82
in Humphries County Hospital funds and used the embezzled funds to re-
model and refurbish the mobile home trailer he purchased for use in the

20

Choctaw County Medical Center's outpatient psychiatric program.

e.. On or about April 1, 2008, RAY SHOEMAKER, through Rural Healthcare Developers, entered into a management agreement with Choctaw County Medical Center and Nursing Home to manage all hospital operations for Choctaw County Medical Center.

f. From on or about April 2008 to on or about September 2008, Choctaw County Medical Center paid RAY SHOEMAKER, by wire transfers, approximately $491,000 in fees under the three aforementioned contracts.

## 18 U.S.C. § 666

11. From on or about January 2007 to on or about April 30, 2008, in the Northern District of Mississippi, the defendant, RAY SHOEMAKER, being an agent of an organization receiving in excess of $10,000 in Federal benefits in the calendar years of 2007 and 2008, that is, being the Administrator and Chief Executive Officer of Humphreys County Hospital in Belzoni, Mississippi, did knowingly and intentionally embezzle, steal, obtain by fraud and otherwise without authority knowingly convert to his own use property of Humphreys County Hospital and Humphreys County, Mississippi valued at $5,000 or more, to wit: approximately $39,922 owned and under the care custody and control of Humphreys County Hospital,

all in violation of Title 18, United States Code, Section 666.

**A TRUE BILL**

**UNITED STATES ATTORNEY**

*/s/ Signature Redacted*
**FOREPERSON**

21